IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FRANK BENES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-663-N |
| | § | |
| CITY OF DALLAS, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### ORDER

This Order addresses Defendants City of Dallas, Texas and Jo M. Puckett's motion for summary judgment [Doc. 16]. For the following reasons, the Court grants Defendants' motion.

### I. THE EMPLOYMENT DISPUTE

Benes was an engineer with the City of Dallas from 1987 until January 24, 2012 when he was terminated. At the time of his termination, Benes was a senior engineer assigned to the Pumping Division of the Dallas Water Utilities ("DWU"). During the period of his employment, Benes, who was born in Czechoslovakia, made numerous complaints that he was paid less than other senior engineers who were younger than him and not born in Czechoslovakia. Benes also filed several complaints within his office related to misconduct within DWU.

In January 2012, Benes sent an email to members of the Dallas City Council alleging misconduct at DWU. Specifically, Benes alleged that the City of Dallas paid $2 million

dollars for two dams to be built as part of the White Rock Spillway project. Benes alleged that the dams were never built despite payments made to contractors. Benes accused the DWU of wasting taxpayer money and endangering the lives and property of residents in the spillway. The day after Benes sent the letter, Puckett sent Benes a letter stating that she intended to seek his termination. As a basis for termination, Puckett cited Benes's numerous complaints related to pay discrimination as well as his more recent complaints relating to corruption. Benes was terminated on January 24, 2012.

Benes sued Puckett and the City of Dallas in state court in January 2013. Defendants removed the case to this Court. In his amended complaint, Benes alleges that Defendants violated 42 U.S.C. § 1983 by terminating his employment in retaliation for exercising his First Amendment right of free speech. He also accuses Defendants of discriminating against him due to his age and national origin in violation of the Texas Commission on Human Rights Act ("TCHRA"). Defendants now move for summary judgment on both claims.

## II. STANDARD FOR SUMMARY JUDGMENT

A trial court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, a court must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court

of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "conclusory allegations, speculation, and unsubstantiated assertions" will not satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). Indeed, factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. THE COURT GRANTS SUMMARY JUDGMENT ON BENES'S FREE SPEECH RETALIATION CLAIM

The basis for Benes's free speech retaliation claim is that Puckett wrongfully terminated him after he sent the January 2012 email to the Dallas City Council informing them of misconduct in DWU.[1] Puckett argues that she is entitled to summary judgment on this claim because Benes's First Amendment right, given the circumstances, was not clearly established. *See* Defs.' Mot. 10–13.[2] The Court determines that it was not clearly established whether Benes's speech was protected speech about matters of public concern or unprotected speech made in the course of his official duties. Accordingly, the Court holds that Puckett is entitled to qualified immunity.

"Qualified immunity is a defense available to public officials performing discretionary functions '. . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Noyola v. Texas Dep't of Human Res.*, 846 F.2d 1021, 1024 (5th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "If reasonable public officials could differ as to whether the defendant's actions were lawful, the defendant is entitled to immunity." *Bolton v. City of*

---

[1] The record reflects that Benes has filed numerous complaints regarding various issues with various city agencies. Defs.' Reply 5–6 [27]. However, the subject of his free speech retaliation claim is the January 2012 email.

[2] Benes has conceded that the City of Dallas is not liable on this claim. Defs.' Mot., App. 832–33.

*Dallas*, 472 F.3d 261, 266 (5th Cir. 2006) (citing *Malley*, 475 U.S. at 341). Thus, this doctrine balances two interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To resolve a public official's qualified immunity claim, a court considers two questions. First, has the plaintiff shown a violation of a constitutional right? *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). And, second, was the right "clearly established" at the time of the public official's alleged misconduct? *Id.* The second inquiry is critical: unless the official violated a clearly established constitutional right, qualified immunity applies. *Id.* "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 235.

The Court addresses the second question first: whether Benes's right to free speech was clearly established at the time of his termination. In so doing, the Court notes that the "operation of this standard . . . depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Though public employees have a "clearly established constitutional right not to be fired for engaging in protected speech," *Haverda v. Hays Cnty.*, 723 F.3d 586, 599 (5th Cir. 2013) (citing *Charles v. Grief*, 522 F.3d 508, 511(5th Cir. 2008)), a "test of 'clearly established law' . . . applied at this level of generality . . . would bear no relationship to the

'objective legal reasonableness' " portion of the test. *Anderson*, 483 U.S. at 639. "Plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* Accordingly, the allegedly violated right must be more particularized. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

Benes claims Puckett violated his right to free speech by firing him after he sent the email to Dallas City Council members. To succeed on a free speech retaliation claim, a public employee must show:

> (1) he was not speaking pursuant to his official job duties; (2) he was speaking as a citizen on a matter of public concern; (3) his interest in speaking outweighed his employer's interest in promoting workplace efficiency; (4) he suffered an adverse employment action; and (5) the adverse action was substantially motivated by the protected speech.

*Petrie v. City of Grapevine*, 904 F. Supp. 2d 569, 576 (N.D. Tex. 2012) (citing *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 184–86 (5th Cir. 2005); *Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008)). Statements made pursuant to official duties receive no First Amendment protection, even if the speech is of great social importance. *Charles*, 522 F.3d at 512. Thus, Benes's First Amendment claim depends on whether he spoke as an employee of the City of Dallas or as a citizen on a matter of public concern, which is a question of law. *See Davis*, 518 F.3d at 315.

There is no bright line rule for determining whether an employee acts in his official capacity or in his capacity as a citizen. Courts consider several factors, including "the

ORDER – PAGE 6

employee's job description, whether he spoke on the subject matter of his employment, . . . whether the speech stemmed from special knowledge gained as an employee," and whether the communication was internal or external. *Petrie*, 904 F. Supp. 2d at 577. The focus is not on the content of the speech but rather on "the role the speaker occupied when he said it." *Davis*, 518 F.3d at 312 (citing *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir. 2007)). But none of these factors is dispositive. *See, e.g.*, *Briscoe v. Jefferson Cnty.*, 500 F. App'x 274, 277–78 (5th Cir. 2012) ("Whether the auditors were in Briscoe's chain of command is not the dispositive consideration in identifying citizen speech protected by the First Amendment.") (unpub. and per curiam); *Charles*, 522 F.3d at 513 ("To hold that any employee's speech is not protected merely because it concerns facts that he happened to learn while at work would severely undercut First Amendment Rights."); *Davis*, 518 F.3d at 312 ("[A] formal job description is not dispositive, nor is the fact that the speech relates tangentially to the subject matter of one's employment." (citing *Garcetti v. Ceballos*, 547 U.S. 410, 1959, 1961 (2006))).

In this case, several factors favor a finding that Benes acted in his official capacity while other factors favor a finding that he acted as a private citizen. Benes spoke on the subject matter of his employment – the White Rock Spillway – and the speech stemmed from special knowledge he gained as an employee. Defs.' Mot., App. 791 [21-10]. His job responsibilities included making reports about the project, though not necessarily reports of public misconduct. *Id.* Benes directed the January 2012 email internally to members of the Dallas City Council. Benes noted in his letter that he is directly responsible for the projects

ORDER – PAGE 7

"[u]nder order of the City Council" and that he was the "City's designated representative" on the project. *Id.* at 790. Thus, the City Council was within Benes's chain of command.[3] He cited his position as a City of Dallas employee throughout the email, but he may have done so to bolster his credentials rather than intending to make the statements in his role as a senior engineer with the City of Dallas. *See Charles*, 522 F.3d at 513.

In sum, Benes's case presents a close call in determining whether he made the statement in his official capacity. The applicable legal standards certainly do not clearly establish that Benes's speech was protected. The Court concludes that it was objectively reasonable for Puckett to determine that Benes's communications were made as an employee and thus not subject to First Amendment protection. Benes's case, "viewed in the light most favorable to him, remains one of nuance and demonstrates the need to recognize [Puckett's] defense of qualified immunity." *Noyola*, 846 F.2d at 1025. "[N]either the 'contours' of [Benes's] rights were so clearly outlined nor was the 'unlawfulness' of terminating [Benes] so 'apparent' that [Puckett] should forfeit [her] qualified immunity." *Id.* (citing *Anderson*, 483 U.S. at 640). Accordingly, the Court finds that Puckett is entitled to qualified immunity and grants her summary judgment on Benes's First Amendment claim.

---

[3]In some circumstances, the fact that a public employee directs a statement to elected officials may weigh in favor of finding that the speech was made as a private citizen rather than in his official capacity. *See Charles*, 522 F.3d at 514 (weighing the fact that plaintiff "communicated directly to elected representatives of the people" in favor of finding that the speech was protected). Here, however, the officials were within the same organization – the City of Dallas – as Benes.

### IV.  THE COURT GRANTS SUMMARY JUDGMENT
### ON BENES'S DISCRIMINATION CLAIM

In his amended complaint, Benes accuses the City of Dallas of violating the TCHRA by paying him less because of his age and national origin and by terminating him after he complained about pay discrimination.[4]  The Court finds that Benes's pay discrimination claim is time-barred and that his behavior in voicing his discrimination complaints was sufficiently disruptive to render the complaints unprotected.  Accordingly, the Court grants summary judgment on Benes's TCHRA claims.

#### *A.  Benes's Pay Discrimination Claim is Time-Barred*

An employee bringing a discrimination claim under the TCHRA must file a complaint with the Texas Workforce Commission civil rights division (the "TWC") or the Equal Employment Opportunity Commission (the "EEOC") by the 180th day after the date an allegedly unlawful employment practice occurs.  TEX. LAB. CODE § 21.202.  The Texas Supreme Court has interpreted the term "occur" to mean "when a discriminatory employment decision is made – not when the effects of that decision become manifest in later events."

---

[4]Though Puckett made the decision to terminate Benes, the City of Dallas is liable for a violation of the TCHRA.  TCHRA defines an employer as "a person who is engaged in an industry affecting commerce" or "an agent of [that] person."  TEX. LAB. CODE § 21.002(8).  Texas courts have construed this provision to mean that employers, and not individual supervisors, are liable under the TCHRA.  *See, e.g.*, *City of Austin v. Gifford*, 824 S.W.2d 735, 742 (Tex. App. – Austin 1992, no writ) ("We determine that even if Gifford sued appellants in their individual capacities, they are not liable for damages because, under the express terms of the Human Rights Act, employers may be liable for an unlawful employment practice.  The Act does not create a cause of action against supervisors or individual employees."); *see also Fisher v. Dallas Cty.*, 2014 WL 1416178, at *5 (N.D. Tex. 2014) (collecting cases).

*Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 503 (Tex. 2012). Though the 2009 amendments to Title VII changed the limitations period with respect to federal discrimination claims, the "Texas Legislature has not similarly amended the TCHRA" and pay discrimination claims must still "be brought within 180 days of the date the claimant is informed of the compensation decision." *Id.*

Defendants argue that Benes's pay discrimination claims are time-barred. *See* Defs.' Mot. 13–15. Benes filed his first charge of discrimination with the TWC on March 23, 2012. *See* Defs.' Mot., App. 100 [18-6], 272 [19-3]. Benes has alleged pay discrimination since at least 2006 and has not shown any evidence that a discriminatory compensation decision was made within 180 days of his TWC complaint. *See* Defs.' Mot. 15. Benes does not address this argument in his response but instead characterizes his claim as a retaliation claim. *See* Pl.'s Resp. 13.[5] Because Benes has shown no evidence that a compensation decision was made within 180 days of his TWC complaint, the Court finds that his claims are time-barred under the Texas statute. The Court therefore grants summary judgment for Defendants on his discrimination claim.

---

[5]Benes does not argue that his termination was itself an act of age or national origin discrimination. To the extent Benes intended to make such an argument, it would also fail. Benes's primary allegation is that the City of Dallas discriminated against him by paying him less than other senior engineers. Thus, it was the decision to pay him less "that constituted the allegedly discriminatory employment decision, not the actual termination." *Chatha*, 381 S.W.3d at 505–06 (citing *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)).

### *B. Benes's Conduct is Not Protected*

The TCHRA prohibits employers from retaliating or discriminating against a person who "opposes a discriminatory practice." TEX. LAB. CODE § 21.055. To prove a retaliation claim, an employee must show that "(1) the employee engaged in a protected activity, (2) the employer took adverse employment action against the employee, and (3) the employer took the adverse action based on the employee's engagement in the protected activity." *Cox & Smith, Inc. v. Cook*, 974 S.W.2d 217, 223 (Tex. App. – San Antonio 1998, pet. denied). To satisfy the first prong, an employee need not show that an unlawful practice, such as discrimination, existed. *Id.* at 224. Rather, the employee must show only that he "held a good faith belief that the employer engaged in activity made unlawful by Title VII or the TCHRA." *Id.*

"Not all activities taken in opposition to an employer's perceived discriminatory practices, however, remain insulated from reprisal." *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 373 (5th Cir. 1998) (citations omitted).[6] Certain conduct, "even though engaged in with the most sincere of intentions, may be so inappropriate as to justify the curtailment of statutorily-afforded safeguards." *Id.* (citation omitted). The Fifth

---

[6]"The Fifth Circuit has held that 'the TCHRA is coextensive with Title VII,' and thus the same analytical framework is used in a discrimination case under the TCHRA as that which is used in a Title VII case. *Reed v. Cook Children's Med. Ctr., Inc.*, 2014 WL 2462778, at *4 (Tex. App. – Fort Worth 2014, no pet. h.) (quoting *Evans v. City of Houston*, 246 F.3d 344, 349 (5th Cir. 2001)); *see also Chatha*, 381 S.W.3d at 505 (stating that Texas courts have looked to "federal law for guidance in situations where the TCHRA and Title VII contain analogous statutory language," except with respect to certain amendments to Title VII).

Circuit applies a balancing test to weigh the rights of the employee to express his grievances with the employer's right to run his business. *Id.* (citing *Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 615 F.2d 1025, 1036 (5th Cir. 1980)). The fact that an employee is opposing discrimination does not immunize all conduct in furtherance of that end. *See Hochstadt v. Worcester Found. for Experimental Biology*, 545 F.2d 222, 231 n.6 (1st Cir. 1976) ("We doubt that Congress meant to [immunize conduct relevant to an employee's opposition to discrimination], particularly because an employee who feels that his employer has violated his rights under Title VII may pursue specific state and federal legal remedies for discrimination and need not rely on vigorous internal action directed against the employer."), *cited with approval by Smith v. Texas Dep't of Water Resources*, 818 F.2d 363, 366 (5th Cir. 1987).

In several cases, the Fifth Circuit has found an employee's behavior in pursuing his complaint so disruptive that the employer's interest outweighs the employee's rights. In *Jeffries*, the Fifth Circuit found an employer justified in terminating an employee who copied and disseminated confidential personnel records to show that her employer discriminated against her. *See* 625 F.2d at 1036. In *Jones v. Flagship International*, the Fifth Circuit found an employee's conduct unprotected where he, an attorney hired to represent the company before the EEOC, filed a charge of discrimination against the company with the EEOC, encouraged other employees to join the suit, and planned to act as the lead plaintiff in a class action discrimination suit against the company. *See* 793 F.2d 714, 716 (5th Cir. 1986). While these actions were taken in furtherance of their complaints of discrimination, the

employees acted in manner that interfered with the performance of their jobs and the employer's right to run his business.

That situation exists here as well. Even assuming that Benes demonstrates a *prima facie* case of retaliation, his behavior was so disruptive that his employer's interest in running his business outweighs Benes's right to express his grievances. Benes began filing internal grievances related to pay discrimination in 2005. Defs.' Mot., App. 1031.[7] Defendants estimate that Benes filed 50 to 60 grievances within a three year period. Defs.' Mot. 24. When Puckett denied Benes's requests, he continued to send grievances, memoranda, open records requests, emails, and other documents to individuals throughout the City of Dallas organization. Defs.' Mot., App. 1032. Puckett estimates that addressing Benes's complaints alone took up approximately ten percent of her time. *Id.* Though Benes personally investigated, and hired others to investigate, his claims, Benes continued to file grievances. *Id.* at 1033. Puckett also discovered that Benes was using City of Dallas equipment and spending his time at work preparing his grievances. *Id.* In November 2011, Puckett placed Benes on administrative leave after an administrative employee reported that she felt threatened by him. *Id.* at 1034. Interviews with Benes's coworkers revealed that coworkers

---

[7]Benes previously sued the City of Dallas for national origin and age discrimination in the Northern District of Texas in 1999. *See Benes v. City of Dallas*, No. 99-CV-0771-P (N.D. Tex. filed April 7, 1999) (Solis, J.). In that case, the Court granted the City of Dallas's motion for summary judgment. *See* Order, Feb. 26, 2002 in *Benes*, No. 99-CV-0771. Benes appealed, and the Fifth Circuit affirmed. *See Benes v. City of Dallas*, 54 F. App'x 405 (5th Cir. 2002) (unpub. and per curiam). Benes petitioned the Supreme Court for a writ of certiorari, which the Supreme Court denied. *Benes v. City of Dallas*, 538 U.S. 979 (2003). Benes claims that his more recent complaints of discrimination involve new issues and distinct facts from those involved in the earlier case. Pl.'s Resp. 15.

felt uncomfortable around Benes because he would secretly record conversations and misconstrue their statements to bolster his discrimination claims. *Id.* at 1315 [24-2]. Benes also made false reports regarding the behavior of other employees. *See id.* at 1306, 1309. Defendants have shown that Benes's behavior in pursuing his pay discrimination claims substantially interfered with the City of Dallas's ability to conduct business. This interference rendered his speech unprotected. The Court therefore grants summary judgment in favor of Defendants on Benes's pay discrimination retaliation claim.[8]

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion.

Signed July 28, 2014.

                                              David C. Godbey
                                              United States District Judge

---

[8] Alternatively, Benes fails to establish causation. Benes began complaining about pay discrimination at least as early as 1999. Despite this long history of alleging pay discrimination, Benes was not terminated until 2012. *See Texas State Office of Administrative Hearings v. Birch*, 2013 WL 3874473, at *23 (Tex. App. – San Antonio 2013, no pet.) ("Authorities have recognized that when determining whether an employee has presented some evidence she was fired for engaging in a protected activity, courts consider the temporal proximity between the participation in the activity and the employer's adverse action."). Thus, he has not shown that the City of Dallas terminated him based on his complaints about pay discrimination and not based on his disruptive behavior.

ORDER – PAGE 14